# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 3:20-bk-4757 |
| METAL PRODUCTS COMPANY, ) | Chapter 11 |
| ) | Judge Walker |
| Debtor. ) | |

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS: December 31, 2020**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: January 12, 2021, AT 10:00 A.M. by AT&T conference line number 1-888-363-4749, Access Code 7250422#**

## NOTICE OF MOTION FOR ORDER APPROVING SALE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

The debtor, Metal Products Company, has asked the Court to authorize the sale of certain assets, more fully described in the attached motion, free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. § 363.

**YOUR RIGHTS MAY BE AFFECTED**. If you do not want the Court to grant the attached motion, or if you want the Court to consider your views on the motion, then on or before December 31, 2020, you or your attorney must:

1. File with the Court your response or objection explaining your position. **PLEASE NOTE: THE BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE REQUIRES ELECTRONIC FILING. ANY RESPONSE OR OBJECTION YOU WISH TO FILE MUST BE SUBMITTED ELECTRONICALLY. TO FILE ELECTRONICALLY, YOU OR YOUR ATTORNEY MUST GO TO THE COURT WEBSITE AND FOLLOW THE INSTRUCTIONS AT: <https://ecf.tnmb.uscourts.gov>.**
If you need assistance with Electronic Filing you may call the Bankruptcy Court at (615) 736-5584. You may also visit the Bankruptcy Court in person at: US Bankruptcy Court, 701 Broadway, 1st Floor, Nashville, TN (Monday - Friday, 8:00 A.M. - 4:00 P.M.).

2. **Your response must state that the deadline for filing responses is December 31, 2020, the date of the scheduled hearing is January 12, 2021, and the application to which you are responding is Motion for Order Approving Sale Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363.**

3. You must serve your response or objection **by electronic service through the Electronic Filing system** described above.

If a response is filed before the deadline stated above, the hearing will be held at the time and place indicated above. *THERE WILL BE NO FURTHER NOTICE OF THE HEARING DATE*. You may check whether a timely response has been filed by calling the Clerk's office at (615) 736-5584 or viewing the case on the Court's website at <www.tnmb.uscourts.gov>.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the application and may enter an order granting that relief.

Respectfully submitted,

/s/ Griffin S. Dunham
Griffin S. Dunham
DUNHAM HILDEBRAND, PLLC
2416 21st Ave. South, Suite 303
Nashville, Tennessee 37212
615.933.5850
griffin@dhnashville.com
*Counsel for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 3:20-bk-04757 |
| METAL PRODUCTS COMPANY, ) | Chapter 11 |
| ) | Judge Walker |
| Debtor. ) | |

## MOTION FOR ORDER APPROVING SALE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

Pursuant to 11 U.S.C. § 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure, Metal Products Company (the "Debtor") hereby files this motion (the "Motion") seeking an order approving the sale of certain of its assets (the "Collateral"), identified on Exhibit A attached hereto, to Plant & Machinery, Inc. (the "Buyer"), 1304 Langham Creek Drive, Suite 454, Houston, Texas 77084, free and clear of liens, claims, and encumbrances. In support hereof, the Debtor states as follows:

### I. BACKGROUND

1. On October 23, 2020, the Debtor filed a voluntary petition for relief, thereby commencing this case under Chapter 11, Title 11, Subchapter V, United States Code, in the United States Bankruptcy Court for the Middle District of Tennessee (the "Court").

2. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is operating its affairs as debtor-in-possession. Timothy Stone has been appointed as the Subchapter V trustee in this case.

3. No trustee or examiner has been appointed in these cases.

4. The Debtor is indebted to First National Bank of Middle Tennessee (the "Lender") pursuant to a series of promissory notes, loan agreements and revolving lines of credit (the "Loans"), dated most recently as March 28, 2019, in the collective amount of $1,190,608.10; provided,

however, that this amount is exclusive of Lender's unsecured claim (in connection with a Paycheck Protection Program loan, dated June 13, 2020) that may be subject to full or partial forgiveness in the amount of $458,643.00.

5. The Loans are secured by a UCC-1 financing statement (the "Lien"), originally filed by the Lender on March 21, 1988, Instrument No. 522252 (DLN No. 880522252), filed with the Tennessee Secretary of State. The Lien provides a collateral description of "[a]ll machinery, equipment, inventory and accounts receivable now owned and hereafter acquired." The subsequent history of the Lien provides as follows:

(a) On March 8, 1993, the Lender filed a UCC-3 continuation statement, Instrument No. 171972, with the Tennessee Secretary of State.

(b) On March 10, 1998, the Lender filed a UCC-3 continuation statement, Instrument No. 982-022304, with the Tennessee Secretary of State.

(c) On February 21, 2003, the Lender filed a UCC-3 continuation statement, Instrument No. 303010050, with the Tennessee Secretary of State.

(d) On February 26, 2008, the Lender filed a UCC-3 continuation statement, Instrument No. 108013955, with the Tennessee Secretary of State.

(e) On February 1, 2013, the Lender filed a UCC-3 continuation statement, Instrument No. 113004979, with the Tennessee Secretary of State.

(f) On February 13, 2018, the Lender filed a UCC-3 continuation statement, Instrument No. B0491-3392

6. In addition to the foregoing, the Debtor filed amendments describing the collateral and increasing the indebtedness that do not relate to perfection and priority, but such amendments are a matter of public record and incorporated as if fully stated herein. Such amendments were filed

on April 25, 1994, January 13, 1997, July 2, 1997, October 21, 1998, October 5, 1999, January 26, 2001, January 7, 2002, February 5, 2003, November 6, 2006, February 8, 2007, October 3, 2007, and June 13, 2013.

7. The Debtor does not dispute the validity or perfection of the Lien. The Debtor further does not dispute that the Lender has a first priority security interest in the Collateral.

8. The Debtor has determined in its business judgment that a sale of the Collateral as set forth herein is in the best interest of creditors and the estate. After months of proposing various sale processes and conferring with multiple parties to purchase the Collateral, the Debtor is convinced the sale of the Collateral to PMI is the highest and best offer for the Collateral and will yield the highest amount of proceeds.

9. The Debtor desires to sell the Assets under terms and conditions substantially similar to the Option 1 of the proposed offer (the "Offer") attached hereto as Exhibit A. Specifically, PMI will purchase the Collateral for $536,500, which will be paid to the Debtor's estate upon execution of the Offer pursuant to the Court's approval of this Motion. The Debtor believes this amount is a reasonable estimate of fair market value. In addition, and pursuant to the terms of the Offer, PMI is entitled to abandon any portions of the Collateral that it is not likely to auction. This abandonment would only benefit the estate and would not affect the purchase price.

10. The Debtor has an option to permit PMI to auction the Collateral (referenced in the Offer as "Option 2"). If the Debtor were to elect Option 2, PMI would prepare the Debtor's site and utilize an on-site sales coordinator to catalog the Collateral and prepare it for sale. PMI would then inventory the assets, provide marketing, provide advertising, and conduct the auction within approximately forty-five (45) days of execution. PMI would further charge a fifteen percent (15%) buyer's premium to compensate PMI for their auction efforts and expenses incurred. The Debtor

would then be remitted the net sales proceeds within twenty (20) banking days after the auction is completed.

11. After conducting due diligence and inquiring into the marketability of the Collateral, the Debtor and the Lender believe Option 1 is most likely to maximize the return to the Debtor's estate. Option 1 removes uncertainty, whereas Option 2 would include a fifteen percent (15%) premium and create the inherent risk of the auction yielding far less net proceeds than the PMI offer of $536,500. Although Option 2 theoretically provides a greater upside, Option 2 also provides a greater downside. During a pandemic and market risks, the Debtor desires to avoid uncertainty that will prejudice the value of the estate.

12. The sale to PMI requires the Debtor to provide good, marketable, and merchantable title to the Collateral, free and clear of all liens, claims, and encumbrances of any kind whatsoever. The Offer includes language that "[b]y its acceptance of this agreement on the signature page hereof, MPC warrants that such title and occupancy are being granted." Accordingly, the Debtor seeks Court approval to execute the Offer, thereby accepting the terms, and transferring title of the Collateral to PMI for the consideration of $536,500.

## II. RELIEF REQUESTED

13. By this Motion, the Debtor seeks entry of an order approving the sale of the Collateral on the terms set forth herein and pursuant to Exhibit A hereto, and granting other relief, including a finding that the sale is in good faith as contemplated by Section 363(m) of the Bankruptcy Code.

14. Section 363 of the Bankruptcy Code authorizes a debtor in possession "after notice and a hearing . . . to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

15. Pursuant to Section 363(f)(2) of the Bankruptcy Code, the Debtor asserts that the

Lender consents to the sale of the Collateral. Upon closing of the sale, the Lender will receive all net proceeds. In connection with the order approving the sale as set forth herein, the Debtor will execute all documents necessary to deliver the proceeds to the Lender. The Debtor anticipates that the sale of the Collateral will reduce the indebtedness on the Lender's secured claim to approximately $654,108.10.

16. The Debtor further seeks the protections afforded to a purchaser with regard to sale transactions under Section 363(m) of the Bankruptcy Code, which provides that the reversal or modification on appeal of the Court's authorization of a sale or lease of property does not affect the validity of the sale or lease if the entity that purchased or leased the property did so in good faith. Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors, or an attempt to take grossly unfair advantage of other offerors. *In re Abbotts Dairies,* 788 F.2d 143, 147 (3d Cir. 1986).

17. The Debtor submits that the proposed method of conducting the sale is reasonable, appropriate, and designed to ensure fairness. Unless specifically disputed at the hearing approving this Motion, the Debtor requests that the sale should be entitled to the protections of Section 363(m) of the Bankruptcy Code. If the good faith of the Debtor or the Buyer is disputed, the Debtor requests that such dispute be determined at the hearing on this Motion.

18. The Debtor requests that the Court allow the sale to be consummated immediately pursuant to Bankruptcy Rule 6004(h).

19. The Debtor further expressly requests the Court for (i) authority to provide the proceeds from the sale of the Collateral to the Lender, and (ii) an order requiring the Lender to release any interest in the Collateral in exchange for the receipt of the sale proceeds.

WHEREFORE, the Debtor respectfully requests the Court enter an order (a) approving the sale of the Collateral; (b) finding that the Debtor and PMI have proceeded in good faith; (c) authorizing payment of the sale price/proceeds to the Lender, (d) authorizing the sale to be consummated immediately as authorized by Bankruptcy Rule 6004; and (d) granting such other and further relief as is just and proper.

Respectfully submitted,

/s/ Griffin S. Dunham
Griffin S. Dunham
DUNHAM HILDEBRAND, PLLC
2416 21st Avenue South, Suite 303
Nashville, Tennessee 37212
615.933.5850
griffin@dhnashville.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

On December 10, 2020, a copy of the foregoing was delivered to all parties who receive CM/ECF notices in this case and delivered to all creditors required to receive service pursuant to Federal Rule of Bankruptcy Procedure 2002 via regular mail.

/s/ Griffin S. Dunham
Griffin S. Dunham



**PLANT & MACHINERY INC.**
AUCTIONEERS · APPRAISERS · LIQUIDATORS · REAL ESTATE

HEADQUARTERS:
1304 Langham Creek Drive, Suite 454, Houston, TX 77084
P.O. Box 218568, Houston, TX 77218-8568

(713) 691-4401 * 800-AUCTION (282-8466)
FAX: (713) 672-7905 · www.pmi-auction.com
E-Mail: pmi@pmi-auction.com

**EXHIBIT A**

October 1, 2020

**Sent via email to: jimdyer@mpcmidsouth.com**

Metal Products Company
300 Garfield Street
McMinnville, TN 37111

Attention: Mr. Jim Dyer

RE: Auction of your McMinnville, Tennessee equipment

Dear Jim,

Thank you for your hospitality shown to Bud upon his visit and the opportunity for Plant & Machinery, Inc. (PMI) to make the following proposal to Metal Products Co. (MPC) regarding items located at your manufacturing facility in McMinnville. This proposal covers the designated tangible personal property ("TPP") as inspected by Bud Moore on Thursday September 3, 2020 and detailed on the attached Exhibit A. We anticipate the auction sales proceeds to fall in the range of $565,000 to $615,000, excluding the two leased Yale forklifts at the Garfield facility, and including the Salvagnini laser.

We suggest the following two alternative options:

### Option#1 (PURCHASE scheduled assets):

PMI will purchase the assets in McMinnville for $536,500 and will conduct a resale effort for our own account. This purchase would close immediately following the execution of this agreement and will require a bill of sale to be executed upon payment. We will send along a suggested bill of sale for review if you choose this option.

### Option #2 (COMMISSION):

PMI will act as sales agent and hold an "onsite live webcast" auction for the benefit of MPC and will not charge MPC a sales commission to conduct the sale. Expenses are estimated to be $43,566 as outlined on the attached budget, will be pre-funded by PMI and deducted from sales proceeds.



# PLANT & MACHINERY INC.
AUCTIONEERS · APPRAISERS · LIQUIDATORS · REAL ESTATE

HEADQUARTERS:
1304 Langham Creek Drive, Suite 454, Houston, TX 77084
P.O. Box 218568, Houston, TX 77218-8568

(713) 691-4401 * 800-AUCTION (282-8466)
FAX: (713) 672-7905 · www.pmi-auction.com
E-Mail: pmi@pmi-auction.com

**Auction Timing:** The auction date is anticipated to occur in mid November (or approx. 45 days following the signing of this agreement) and the building will be fully emptied of auction purchases within 30 working days or so after the sale.

In each option above, PMI will charge and retain our customary 15% buyer's premium from auction purchasers. A third-party online bidding platform provider will be utilized to conduct a concurrent online webcast auction, and an additional 3% buyer's premium will be charged to the successful online purchasers only, as their fee. PMI will be responsible for remitting any payment due to the third-party provider.

PMI will handle all aspects of the auction sale, including:

1. **SITE PREPARATION AND SUPERVISION OF SITE CLEARANCE:** PMI will provide an on-site sales coordinator (Leadman) for the cataloging of the TPP and to perform the cleanup, preparation and merchandising of the TPP for sale. PMI Leadman will then return to the site for inspection and auction days and remain on-site to oversee removal of the TPP. The Leadman will require unfettered access to the facility to perform his duties.

2. **ASSET INVENTORYING:** PMI personnel will describe the various lots to be auctioned. PMI will assume the responsibility for the dictation and preparation of all computer entries of lot numbers and lot descriptions which will then be used to prepare advertising, to publish catalogs for the sale, and also to print invoices to all buyers.

3. **MARKETING:** PMI advertising people will photograph the TPP, prepare detailed descriptions and assemble other pertinent information for advertising.

4. **ADVERTISING SPECIFICS:**

    **A. PRINT MEDIA:** Advertising will include a direct mail flyer sent to potential customers. We will advertise in applicable trade journals and area newspaper media.



**PLANT & MACHINERY INC.**
AUCTIONEERS · APPRAISERS · LIQUIDATORS · REAL ESTATE

HEADQUARTERS:
1304 Langham Creek Drive, Suite 454, Houston, TX 77084
P.O. Box 218568, Houston, TX 77218-8568

(713) 691-4401 * 800-AUCTION (282-8466)
FAX: (713) 672-7905 · www.pmi-auction.com
E-Mail: pmi@pmi-auction.com

    **B. ELECTRONIC MEDIA:** Digital brochures will be downloadable from the calendar web page created for this auction. Colorful and informative HTML ads will be sent via an email campaign, all containing directing links and associated keywords from the auction.

5.    **ADVERTISING FOLLOW-UP:** PMI further will engage in a telephone marketing campaign to provide a personal touch to invitations for participation to the most serious bidders.

6.    **CONDUCT OF SALE:** PMI will provide auctioneers as well as support personnel for registration, recording the auction, invoicing, collections, MPC.

7.    **COLLECTIONS AND REMITTANCES:** PMI will collect all auction proceeds and charge and collect from buyers at the auction all applicable sales taxes and remit those taxes to the appropriate entity. In the case that Option #2 is selected, PMI will provide MPC with a detailed accounting and disbursement of final net proceeds within twenty (20) banking days after the auction.

PMI will require good, marketable and merchantable title to the TPP, free and clear of all liens, claims and encumbrances of any kind whatsoever, including without limitation, taxes for the year 2020 and all prior years and any and all security interests, statutory and constitutional liens, possessory liens, mechanic's and materialman's liens, liens for taxes, judgements or decrees, and the rights of former owners and lessors, and that sufficient period of expense-free occupancy be made available at the sale site to properly conduct the sale and to arrange for the removal of items sold. By its acceptance of this agreement on the signature page hereof, MPC warrants that such title and occupancy are being granted.

MPC will continue pay for building rent, security, waste collection, utilities, and any required insurance throughout the auction process.

We also want to remind you that while we are willing to assist you in any way possible, the continued responsibility for the disposal of any hazardous or toxic waste if the same should exist would have to be with parties other than PMI. MPC will be responsible for the eventual disposal of any fluids removed from the TPP and left in the facility. We retain the right of abandonment.

# PLANT & MACHINERY INC.
AUCTIONEERS · APPRAISERS · LIQUIDATORS · REAL ESTATE

HEADQUARTERS:
1304 Langham Creek Drive, Suite 454, Houston, TX 77084
P.O. Box 218568, Houston, TX 77218-8568

(713) 691-4401 * 800-AUCTION (282-8466)
FAX: (713) 672-7905 · www.pmi-auction.com
E-Mail: pmi@pmi-auction.com

Also, please be aware that PMI comes on-site with liability insurance coverage of $11,000,000. MPC will automatically be added as additional insured on the policy.

If applicable, MPC warrants that it will be responsible for and will have taken all necessary steps to give any legally required notice of the auction sale as required by law to all interested and concerned parties, and that it will have taken all actions necessary to comply with any applicable laws or the terms of any applicable lending and security documents if the same should exist.

All items will be sold on an "As Is, Where Is" basis at the auction. PMI will leave the facility in a neat and businesslike manner.

MPC hereby agrees to protect, hold harmless, and indemnify PMI, its owners, officers, directors and employees from any and all demands, claims, causes of action, liabilities, judgements and expenses including attorney fees and court costs in any way arising out of the obligations, certifications, warranties, covenants and representations set forth herein made by MPC with reference to the sale and title matters.

If you have any questions or comments, please feel free to contact me. We look forward to your favorable response. I can be reached at 1-800-AUCTION (282- 8466) or my cell at 713-825-4054.

Best regards,

PLANT & MACHINERY, INC.

Ronald G. Moore
President

**WE HEREBY CHOOSE OPTION #**_____

_____ Date: _____
(Signature)

Name (printed)_____ Title: _____
For METAL PRODUCTS COMPANY


**PLANT & MACHINERY INC.**
AUCTIONEERS · APPRAISERS · LIQUIDATORS · REAL ESTATE

HEADQUARTERS:
1304 Langham Creek Drive, Suite 454, Houston, TX 77084
P.O. Box 218568, Houston, TX 77218-8568

(713) 691-4401 * 800-AUCTION (282-8466)
FAX: (713) 672-7905 · www.pmi-auction.com
E-Mail: pmi@pmi-auction.com

### Exhibit A - METAL PRODUCTS COMPANY EQUIPMENT LIST

| ITEM | QTY | DESCRIPTION |
|---|---|---|
| 1 | 2 | HOPPERS, 2 cu. yd. |
| 2 | 1 | PORTABLE SPOT WELDING GUN |
| 3 | 1 | SPOT WELDING GUN, TECHNA, new 2004, 110 KVA |
| 4 | 1 | SPOT WELDER, T J SNOW, new 2017, 120 KVA, 30" throat, Entron controls |
| 5 | 1 | WATER CHILLER, T J SNOW |
| 6 | 1 | SPOT WELDER, T J SNOW, 50 KVA, rocker arm |
| 7 | 1 | FLEXARM TAPPING MACHINE, w/table |
| 8 | 1 | PUNCH, STRIPPIT/CUSTOM 18/30, w/tooling |
| 9 | 1 | SPOT WELDER, SNOW |
| 10 | LOT | MONARCH 10EE LATHE & DRILL PRESS |
| 11 | 1 | CNC BRAKE, TOYOKOKI MDL. APB5620W |
| 12 | 1 | HARDWARE PRESS, HAEGER MDL. HP-6 |
| 13 | 1 | HARDWARE PRESS, AUTOSERT MDL. AD-7, bowl feeder, S/N 1075 |
| 14 | 1 | CNC BRAKE, AMADA MDL. RG-50, new 1989, NC9-EXII control |
| 15 | 1 | CNC BRAKE, AMADA MDL. RG-50, new 1989, NC9-EXII control |
| 16 | 1 | LASER, CINCINNATI MDL. CL-707, 1,500 watt |
| 17 | 1 | FIBER LASER, SALVAGNINI MDL. L-0380, new 2012, 3,000 watt, 5 x 10, pallet change, non-factory screen |
| 18 | 1 | MARKING MACHINE, PROPEN |
| 19 | LOT | JET DRILL PRESS & PEDESTAL GRINDER |
| 20 | LOT | ROLLER CABINET & DRILLS |
| 21 | 1 | HYDRAULIC ANGLE SHEAR |
| 22 | 1 | POWER SLIP ROLL, 3' |
| 23 | 1 | VACUUM SHEETLIFTER, ANVER |
| 24 | 1 | HYDRAULIC SCISSOR TABLE |
| 25 | 2 | SALVAGNINI CARCASSES |
| 26 | 1 | CNC PRESSBRAKE, AMADA MDL. FBD-1030, new 1993, NC9EXII control |
| 27 | 1 | CNC PRESSBRAKE, LVD PREB 150/10, new 2007, Cadmon CNC control |
| 28 | LOT | (4) ROLLER DRAWER CABINETS w/PRECISION TOOLING |
| 29 | 1 | CNC PRESSBRAKE, AMADA MDL. 4FE-170, new 2001, Operateur CNC, HFE170-4S |
| 30 | 1 | CNC PRESSBRAKE, AMADA MDL. HFB-125, new 1997, Operateur CNC control |
| 31 | LOT | PRECISION TOOLING (large amount) |
| ~~32~~ | ~~1~~ | ~~FORKLIFT, YALE 5,750 LB. CAP., LPG pwrd., side shift, S/N C910V0235N~~ |
| 33 | 1 | TURRET PUNCH, WIEDEMANN MURATA CENTRUM 2000 |
| 34 | 1 | CNC TURRET PRESS, AMADA MDL. EMK3612M2 MARK II, new 7/2013, servo ram, (4) AI |
| 35 | LOT | TOOLING, AMADA |
| 36 | 1 | AUTOMATIC PUNCH GRINDER, DCM |
| 37 | 1 | STUD WELDER, LYNX |

PLANT & MACHINERY INC.
AUCTIONEERS · APPRAISERS · LIQUIDATORS · REAL ESTATE

HEADQUARTERS:
1304 Langham Creek Drive. Suite 454. Houston, TX 77084
P.O. Box 218568. Houston. TX 77218-8568

(713) 691-4401 · 800-AUCTION (282-8466)
FAX: (713) 672-7905 · www.pmi-auction.com
E-Mail: pmi@pmi-auction.com

## Exhibit A - METAL PRODUCTS COMPANY EQUIPMENT LIST

| ITEM | QTY | DESCRIPTION |
|---|---|---|
| 38 | 2 | CHOP SAWS |
| 39 | 1 | VERTICAL BANDSAW, GROB 36" |
| 40 | 1 | MITER HORIZONTAL BANDSAW, HYD-MECH MDL. S-20A, conveyors |
| 41 | 1 | HORIZONTAL BANDSAW, HYD-MECH MDL. S-20 SERIES II |
| 42 | 1 | PALLET WRAPPER, LANTECH |
| 43 | 1 | ~~FORKLIFT, YALE 5,750 LB. CAP., pwr. forks, side shift~~ |
| 44 | 1 | SANDER, G&P, 60" stroke |
| 45 | 1 | SANDER, TIMESAVERS 36" MDL. 237-1M |
| 46 | LOT | DOUBLE SIDED CANTILEVER RACK, w/material |
| 47 | 1 | GRINDER, TIMESAVERS 36" MDL. 337-M33-HEAD, dust collector |
| 48 | LOT | BONEYARD: BROKEN TOY KOIKI, CINCINNATI LASER PARTS, AMADA TAPPER |
| 49 | 1 | ACORN TABLE, WELDSALE 5 X 10 |
| 50 | 1 | LINCOLN POWERMIG 250, new 2010 |
| 51 | 1 | ACORN TABLE, WELDSALE 5 X 10 |
| 52 | 1 | LINCOLN POWERMIG 250 |
| 53 | 1 | LINCOLN PRECISION TIG 275 |
| 54 | 1 | TIG RIG, MILLER |
| 55 | 2 | PEDESTAL JIBS, CONTRX 1/2 T. CAP. |
| 56 | 2 | SINGLE SIDED CANTILEVER RACKS |
| 57 | 1 | STRAIGHT SIDE HYDRAULIC PRESS, PACIFIC 400 T. CAP. MDL. 400DE-48, late 1970's, (3) draw cushions, 48 x 96 bed, S/N 3909 |
| 58 | LOT | PARTS CRIB, w/HARDWARE |
| 59 | 1 | OBI GEARED, MINSTER NO. 6, variable spd., spds: 90-180 SPM, 5" stroke, 14.5" shut height, S/N 24655 |
| 60 | 1 | SERVOMAX FEEDER, CWP 12" |
| 61 | 1 | STRAIGHTENER, JACO 12" |
| 62 | 1 | COIL REEL, JACO 12" |
| 63 | 1 | SANDER, TIMESAVERS 36" |
| 64 | 1 | PIPE THREADER, RIDGID MDL. 1822 |
| 65 | 1 | DOUBLE CRANK GAP PRESS, STAMTEC MDL. G2-200, new 1999, 25-45 SPM, 9.84" stroke, 19.69" shut height, 33" x 94" bed |
| 66 | 1 | SERVOMAX FEEDER, CWP 24" |
| 67 | 1 | STRAIGHTENER, JACO 24" |
| 68 | 1 | REEL, JACO 24" |
| 69 | 1 | LINCOLN POWER MIG 256 |
| 70 | 2 | LINCOLN POWER MIG 255 |
| 71 | 1 | MILLER SYNCROWAVE 250, S/N LA |
| 72 | 1 | ACORN TABLE, 5 x 5 |
| 73 | 1 | ACORN TABLE, 6 x 6 |
| 74 | 1 | MILLER DYNASTY 350 TIG, new 2016 |

**PLANT & MACHINERY INC.**
AUCTIONEERS · APPRAISERS · LIQUIDATORS · REAL ESTATE

HEADQUARTERS:
1304 Langham Creek Drive, Suite 454, Houston, TX 77084
P.O. Box 218568, Houston, TX 77218-8568

(713) 691-4401 * 800-AUCTION (282-8466)
FAX: (713) 672-7905 · www.pmi-auction.com
E-Mail: pmi@pmi-auction.com

## Exhibit A - METAL PRODUCTS COMPANY EQUIPMENT LIST

| ITEM | QTY | DESCRIPTION |
|---|---|---|
| 75 | 1 | MILLER MILLERMATIC 350P, new 2016 |
| 76 | 1 | MILLER 350P |
| 77 | 1 | LINCOLN PRECISION TIG 225 |
| 78 | 1 | WELDING ROBOT, FANUC ARCMATE 120 6-AXIS, new 1999, Invertec STT-II pwr. supply |
| 79 | 1 | LINCOLN POWER MIG 255 |
| 80 | LOT | SINGLE SIDED CANTILEVER RACK, w/MATERIALS |
| 81 | 1 | PLATINUM ARM, FARO, new 2008, mtd. to granite plate, CAM 2 software |
| 82 | LOT | BALANCE OF Q.C. |
| 83 | 1 | ELECTRIC PALLET JACK, YALE |
| 84 | 1 | OPTICAL LASER INSPECTION MACHINE VIRTEK, new 2001 |
| 85 | 1 | MECHANICAL SHEAR, AMADA 10' X 1/4, new 1987 |
| 86 | 1 | FREE STANDING CRANE, 1 T. cap. |
| 87 | LOT | (10) SINGLE SIDED CANTILEVER RACKS, w/MATERIALS |
| 88 | LOT | (6) DOUBLE SIDED CANTILEVER RACKS, w/MATERIALS |
| 89 | 1 | VIBRATORY BOWL, AUTOMATED FINISHING 10 CU. FT. |
| 90 | LOT | DOUBLE SIDED CANTILEVER RACK, w/MATERIALS |
| 91 | LOT | JUNK OUTSIDE: PLASTIC TOTES, BASKETS, RACKS, ETC. |
| 92 | LOT | MISC. PICKUP: TABLES, HOPPERS, ETC. THROUGHOUT |
| | | **ENTERPRISE LANE** |
| 93 | 1 | BASEMENT MAXIBLAST BLASTER, 3 pos. |
| 94 | 1 | RECIPROCATING AIR COMPRESSOR KELLOGG, skid mtd. |
| 95 | 1 | FORKLIFT, YALE 8,000 LB. CAP., LPG pwrd., side shift, pwr. forks, S/N E813V05241D |
| 96 | 1 | FORKLIFT, YALE 6,000 LB. CAP., LPG pwrd., side shift, fork pos., S/N A910V16011H |
| 97 | 18 | TEARDROP RACK SECTIONS |
| 98 | 1 | PALLET WRAPPER, WOLFTEC |
| 99 | 1 | DIGITAL PLATFORM SCALE |
| 100 | 1 | MILLER SYNCROWAVE 250, S/N LA |
| 101 | 2 | LINCOLN POWER MIG 255 |
| 102 | 1 | ACORN TABLE, WELDSCALE 5 X 5 |
| 103 | 1 | ACORN TABLE, WELDSCALE 6 X 6 |
| 104 | 1 | FORKLIFT, YALE 6,000 LB. CAP., LPG pwrd., side shift, fork pos. |
| 105 | 1 | 5-STAGE STAINLESS PARTS WASHER, 24 x 48 opening, Nordson booth, blow-off oven, Zig Zag cure oven |
| 106 | LOT | MORE RACKS, (2) BIG PORTA COOLS, ETC. |
| 107 | LOT | MISC. ITEMS THROUGHOUT NOT DETAILED |
| 108 | 1 | PICKUP TRUCK, FORD F-150 |

PLANT & MACHINERY INC.
AUCTIONEERS · APPRAISERS · LIQUIDATORS · REAL ESTATE

HEADQUARTERS:
1304 Langham Creek Drive. Suite 454. Houston. TX 77084
P.O. Box 218568. Houston. TX 77218-8568

(713) 691-4401 * 800-AUCTION (282-8466)
FAX: (713) 672-7905 · www.pmi-auction.com
E-Mail: pmi@pmi-auction.com

## EXHIBIT B – METAL PRODUCTS AUCTION EXPENSE BUDGET

| | | | |
|---|---|---|---|
| A. Direct Mail Advertising | | | |
|    -Brochures (12,000/6-page/color throughout) | $ 3,938 | | |
|    -Postage | 5,355 | | |
|    -Mailing List | 638 | | |
|    Total Direct Mail Advertising | | $ 9,931 | |
| B. Print Media Advertising & 3rd party Email blitz | | 4,500 | |
| C. Website HTML creation, internal E-blitz, etc. | | 600 | |
| D. Sale Day Catalogs | | 150 | |
|    Total Advertising Expenditures | | | $ 15,181 |
| E. Labor | | | |
|    -Leadman: 5 man weeks | | 5,000 | |
|    -Auction office crew & backup ringman/auctioneer | | 850 | |
|    -Temporary Labor: 480 man hours | | 9,120 | |
|    Total Labor | | | 14,970 |
| F. Travel: Airfare, Lodging, Subsistence, Mileage | | | 11,390 |
| G. Miscellaneous | | | |
|    -Cleaning Supplies | | 250 | |
|    -Office Supplies | | 100 | |
|    -Bank Charges | | 150 | |
|    -Credit card processing charge (for deposits) | | 50 | |
|    -General Insurance | | 250 | |
|    -Ship Auction Stand, Supplies, etc. | | 500 | |
|    -Sale Day Security Guard | | 150 | |
|    -Bidspotter Remote Administration Fee | | 575 | |
|    Total Miscellaneous | | | 2,025 |
|    TOTAL | | | $ 43,566 |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 3:20-bk-04757 |
| METAL PRODUCTS COMPANY, ) | Chapter 11 |
| ) | Judge Walker |
| Debtor. ) | |

**ORDER APPROVING SALE FREE AND CLEAR OF
LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363**

This matter is before the Court upon the Debtor's *Motion for Order Approving Sale Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363* (the "Motion"). In the Motion, the Debtor sought entry of an Order approving the sale of certain assets (defined in the Motion as "Collateral") to Plant & Machinery, Inc. ("PMI"), free and clear of liens, claims, and encumbrances. The Debtor provided notice of the Motion pursuant to Federal Rule of Bankruptcy Procedures 6004 and 9013 and Local Rule 9013-1. No objections were filed prior to the deadline of December 29, 2020. The Court hereby finds that the sale of the Collateral in accordance with the terms of the Offer (as defined in the Motion) is in the best interests of the Debtor, the bankruptcy estate, and all creditors, cause exists to grant the Motion. It is therefore ORDERED as follows:

1. The Motion is GRANTED.

2. The Debtor is authorized to execute the Offer and sell the described Collateral (as defined in the Motion) to PMI on the terms set forth in the Offer. The sale of the Collateral shall be free of all liens, encumbrances, and interests of any kind.

3. The Debtor shall execute all documents necessary to deliver proceeds from the sale of the Collateral to First National Bank of Middle Tennessee. First National Bank of Middle Tennessee shall record and/or file all documents necessary to release any interest in the Collateral.

4. Notwithstanding Bankruptcy Rule 6004(h), and as specifically requested in the Motion, this Order shall take effect immediately upon entry.

IT IS SO ORDERED.

THIS ORDER WAS SIGNED AND ENTERED
ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.

/s/ Griffin S. Dunham
Griffin S. Dunham
DUNHAM HILDEBRAND, PLLC
2416 21st Ave. South, Suite 303
Nashville, Tennessee 37212
615.933.5850
griffin@dhnashville.com
*Counsel for the Debtor*